And the Supreme Court has convened. The first case on the docket this morning is Agenda No. 119484, People v. Ringland at L, Agenda No. 1. Counsel for Appellants, are you ready? If that pleases you, you may proceed. Good morning. May it please the Court, Counsel, I'm Assistant Attorney General Josh Schneider on behalf of the people of the State of Illinois. This case presents two issues. The first is an issue of statutory construction. Does 55 ILCS 5-3-9005B authorize the LaSalle County State's Attorney to appoint special investigators to participate in joint drug trafficking investigations with local law enforcement agencies by conducting traffic stops to allow canine sniffs? The second issue is a question of remedy. Are there such traffic stops where the traffic stops were substantively proper, the special investigator conducting the stops was substantively qualified, but the investigator's appointment was in some way procedurally flawed? Resolution of the first issue as an issue of statutory construction turns on the plain language of the statute. And the statute provides that State's attorneys are authorized to appoint special investigators to conduct investigations that assist the State's attorney in the performance of his duties. Now, this Court has recognized, and I don't believe the defendants dispute, that State's attorneys, as the chief law enforcement officials of their counties, have an affirmative duty to investigate suspected illegal activity where local law enforcement agencies need investigative assistance. May I ask where you derive that principle? Well, this Court in People v. Williams, relying on the ABA standards. Have you reviewed People v. Williams, Dennis Williams, Fort Hyde 4? There's a case in which Dennis Williams asked this Court to order the State's attorney to investigate newly discovered evidence that he did not commit the crime for which he was sentenced to death. This Court, saying that, of course, there are times when the State's attorney acts because the newspapers were doing a good enough job of investigating the newly discovered evidence. Sometime later, it became clear that Mr. Williams was wrongly accused. He was exonerated and received one of the largest settlements for wrongful convictions in the State. That's the case that you have chosen to center your argument on. Why is there any other source for the principle that you just stated? Well, Your Honor, the District Court also quoting the ABA standards, and I believe it's People v. Wilson, also. And we're not citing the case for anything beyond the existence of a duty of State's attorneys to investigate suspected illegal activity in support of local law enforcement agencies. And in Williams, as Your Honor notes, it may have been better served had the State's attorney investigated that newly discovered evidence and done further independent investigations. So certainly, we would argue that People v. Williams doesn't suggest that the State's attorney does not have such a duty. And again, the defendants don't dispute that. And it makes sense that State's attorneys would have a duty to investigate. May I ask you if the State's Attorney's Act lists the duties of the State's attorney, correct? Yes, Your Honor. Do any of the statutory duties include investigation of crime? Well, Section 3-9005A, I believe it's 11, provides that State's attorneys also have such other duties are enjoined by law. And that, of course, includes common law. And so our position is that where the Illinois courts have recognized a duty beyond the specified enumerated duties in A, that one of those duties is the investigation of suspected legal activity. And certainly, the history of law enforcement in Illinois reflects this collaborative investigative, shared investigative duty. We provide a string set of cases, not for the proposition that they stand, not for the proposition that that is legal or that that is lawful, but as illustrations of the fact that the various investigative bodies of the executive branch have historically acted in concert, supporting one another's investigative efforts. So a good example is drug trafficking along Interstate 80. When a local law enforcement agency encounters a particularly challenging investigative case, it makes sense for the other law enforcement agencies in the area to pool their resources to support the agency's efforts. State's attorneys, in particular, may have particular expertise. Investigators may provide expertise in narrow areas like complex financial crime, cybercrime, interstate drug trafficking. They also just provide additional bodies. I mean, if you're going to conduct a major investigation, you need bodies equipped with police powers to do so. If you're canvassing an area for a murderer, you can only knock on as many doors at a time as you have personnel to knock on doors. So to the extent that you can get supportive personnel from the state's attorney who are equipped with the powers necessary to expand your investigative capabilities, that is all to the good. And investigations of interstate drug trafficking along Interstate 80, it's exactly the kind of daunting investigative challenge that local law enforcement agencies need assistance with. I-80 is one of the major drug trafficking corridors in the country. It's either the primary or secondary highway route used by traffickers to transport cocaine, marijuana, heroin, MDMA, and methamphetamines across the country. And about 30 miles of this drug trafficking superhighway runs straight through LaSalle County. LaSalle County is relatively large geographically, but it's also relatively rural. And the communities along I-80 are relatively small. The population of Peru, Illinois is about 10,000 people. And if you move east along I-80, the population of the city of LaSalle is about 10,000 people. Keep moving east and you run into Ottawa, which is the largest city in the county. In the county seat, its population is less than 20,000 people. And according to the city of Ottawa's official government website, the police department in Ottawa is 33 sworn officers, since those officers are probably not working 24-hour shifts seven days a week. If you take them, split them across three eight-hour shifts, they've got staggered days off and so on, you're probably looking at less than a quarter of those 33 sworn officers actually on duty at any given time. They have to respond to all of the law enforcement responsibilities in that county, all the traffic accidents, all of the domestic violence calls, all of the community welfare checks, all of the things that we rely on police to do. In addition, they have several miles of this significant drug trafficking corridor running through their jurisdiction. And if they have a couple miles of that jurisdiction and the drug traffic is moving through at about 70 miles an hour, they have a matter of minutes to try and identify the culprits, the people who were involved at any given time in that drug trafficking. So it's not surprising that they needed assistance, and the LaSalle State's attorney offered that assistance. In the form of special investigators, there were former state Illinois police troopers who had experience not only in drug interdiction, but specifically drug interdiction along Interstate 80. And that this assistance was welcome. It wasn't some interloper. It was welcome assistance as evidenced by the fact that they entered into these arrangements, these investigative joint arrangements to investigate drug trafficking along I-80. Q. Mr. Schneider, was there an arrangement in this particular situation? A. Yes, Your Honor. So in Defendant Ringland's particular case, Investigator Gaither was sitting on the median of I-80 looking for vehicles to pull over for traffic stops to allow canine sniffs. The Peru Police Department had a canine unit tasked to respond to State's attorney traffic stops. Gaither would call in the stop, and then the Peru Police Department would dispatch the canine unit, which was waiting nearby, to be sure to arrive in time to effect the drug sniff without unconstitutionally prolonging the stop. The same was the case in Defendant Pirro's stop, where I believe it was a LaSalle Police Department canine unit that was dispatched. Q. Mr. Schneider, you indicate, I think, in response to the fact that it's not to be, I think the defendant makes the argument that it's like the State's attorney has their own local police force, and you indicate, well, one of the protections is it has to be in coordination with other agencies, right? A. That's absolutely right. Q. Well, isn't one of the other protections the fingerprint requirement, which in this case the reliance is upon fingerprints from 20 years ago, and you doing your own background checks rather than an independent background check? Isn't that another safeguard that was not met in this case? A. Well, two answers. One is we argue that that safeguard was followed because his fingerprints were taken, and the whole, the reason that fingerprints are used for identification for criminal background checks is that they are persistent. I mean, if you take someone's fingerprints 10 years ago, it's so that if they commit a crime now, and you can match their fingerprints. They're like DNA checking. So the fact that the Illinois State Police had a set of fingerprints on file, and then informed the State's attorney that they didn't need another copy of the fingerprints because they had them on file, we would argue is at the very least substantial compliance with that requirement. And I would also note that in the, I believe it was the waiver request that the State's attorney submitted to the Illinois Law Training and Standards Board, he certified that Gaither had in fact been subjected to a criminal background check using the fingerprint cards processed by the Illinois State Police. That's at record site C-144 in Defendant Ringland's common law record. But the other answer to your question is that whether Investigator Gaither was properly appointed is a separate question from whether the evidence discovered pursuant to a traffic stop he affected needs to be suppressed. This Court has made clear that suppression is a, and this is from just the nature and purpose of the suppression remedy. The Court's made clear that suppression is an extraordinary remedy. It's a remedy of last resort. And the reason it's a remedy of last resort is because it exacts a heavy toll on the judicial system and society at large, allowing, or we're excluding reliable, trustworthy evidence of a defendant's guilt in the interest of deterring future unlawful police conduct. So Does that hinge into your de facto officer argument? Is that? It does, yes. The rationales are all connected because suppression only serves a deterrent effect, where the conduct you're attempting to deter is sufficiently deliberate and sufficiently culpable. So the sorts of circumstances where the Court has applied suppression, where cases where the condition that rendered the conduct unlawful was something that officers could actually take into account and factor into their decision-making process. So where the Court upheld suppression for arrests outside of an officer's jurisdiction to affect arrests, extraterritorial arrests, that an officer is aware of whether he is physically within or without his geographical jurisdiction and can decline to exercise his police powers if he has no jurisdiction to do so. Similarly, an officer knows whether he saw someone run a red light. If he's going to pull someone over for running a red light, he knows if he has probable cause to do so or not. He can decline to do so or he doesn't. An officer knows the amount of force that he or she is applying, and so he can decline to use force beyond what's called for by the situation. An officer knows whether he's given a defendant their Miranda warnings and can decline to begin a custodial interrogation without having advised them of their rights. These are all conditions that an officer is aware of and so can comport himself accordingly. And so they are susceptible to deterrence. But where the condition is unknown to officers, like an invalidity in an arrest warrant, the officer runs a warrant check, an arrest warrant pops up. The officer has no access to whether that warrant was validly issued or not. He knows this warrant is in the system, and if he affects it, he serves that warrant and arrests the defendant. Suppression doesn't deter future officers from executing future invalid warrants because those future officers have the same lack of access to that condition. And this is where the de facto officer doctrine comes in. Another condition that's invisible to an officer who is acting under apparent authority, which is apparent both to him and to the public, is an invalidity in his color of title. Take this case. Investigator Gaither, he retired after 20 plus years of service in the Illinois State Police. I believe he was a sergeant. And then six months later, he is appointed as a special investigator by the LaSalle County State's Attorney. He's administered his oath of office. His appointment is approved by the county board. He starts receiving paychecks. He's issued his official state's attorney vehicle with the lights. He's got a citation book to write the traffic warnings that he's stopping vehicles for the purpose of affecting canine sniffs. As far as he knows, and as far as the public knows, he is a special investigator of the state's attorney's office with all of the powers of that office. If there is some defect in his color of title, there is no way for him to take that into account when he is affecting searches or seizures. The only way that this would be unlawful conduct that we would expect officers to refrain from participating in would be if there is a legal requirement that a police officer or sheriff's deputy refuse to perform their duties to affect that notwithstanding their employer's representations, they were actually appointed in strict compliance with the governing statutes and administrative regulations, which would require that they go through their personnel files and the records of their employers. I suppose they'd probably file FOIA requests to get the records of the various administrative bodies and regulatory bodies that have to go through all of the governing statutes, administrative regulations, ordinances, department rules. And then only then, if they're satisfied, they're actually officers, could they then go out and act as officers. And under these sorts of circumstances, suppression just doesn't justify the cost that it imposes of letting defendants go free. Ultimately, the unlawful condition that defendants complain of, the flaws in Detective Gaither's appointment, are unrelated to the acquisition of the evidence that they seek to have suppressed. If you go through a narrative of any of the defendant's stops, Investigator Gaither pulls them over based on probable cause that they've committed a traffic violation. While he's performing the traffic stop, a K-9 unit arrives. The K-9 unit conducts a sniff, alerts to the vehicle, and they discover drugs. Nowhere in those narratives does the failure of the Illinois State Police to send a letter to the state's attorney about the results of a background check come up. In Defendant Ringland's case, where there was a Peru police officer in the car, Defendant Gaither was the one who pulled the vehicle over. He's the one who turned on the sirens. If he had not pressed the button to turn on the sirens, if the officer, Officer Brown, pressed the button to turn on the sirens, the defense would have no complaint. The stop was the same stop that was affected. In fact, it was the same probable cause affected in the same manner. There's no prejudice to the defendant. There was no Fourth Amendment violation. There was no excessive force. It's simply the fact that somewhere in the past, Investigator Gaither's appointment was flawed. But as far as anyone at that scene knew, he had apparent authority to act as a special investigator. And investigations are, or traffic stops are part of investigations. Drug trafficking investigations are, they require that you stop the vehicle. You can't conduct a canine sniff at 70 miles an hour. You have to stop the vehicle. And the way that you stop the vehicle while affording defendants their constitutional rights is to have probable cause there's been a traffic offense. So a traffic stop is probably the primary investigative tool for investigating drug trafficking. And there are other kinds of seizures that are also, of course, investigative tools. The Terry stop, although it allows the pat-down, is also known as an investigatory stop. It is a seizure for the purpose of investigating suspected legal activity. And for those reasons, we ask that the Court reverse the District Court and the Circuit Court. Thank you. Can you please the Court, Counsel, Madam State's Attorney. My name is Dimitri Golfus. I'm from the Office of the State Appellate Defender. And I represent James Saxon. Your Honor, as the attorneys for the defendants, I have the least of agreed that I will spend the first 15 minutes of our oral argument and that Mr. Stephen Comey will present the last 15 minutes of our oral argument. My oral argument will focus on the issue that was addressed and decided by the Appellate Court, which is whether Section 3-9005 of the County's Code authorizes State's Attorneys to appoint special investigators to act as the State's Attorney's own private police force, and in this case, particularly, to patrol an interstate highway for purposes of drug interdiction. The unanimous panel of the Appellate Court held that the County's Section 3-9005B authorizes special investigators for the State's Attorney to perform three and only three functions. Serving subpoenas, making a return of process, and conducting investigations that assist the State's Attorney in the performance of his duties. It's undisputed that the State's Unit does not serve subpoenas or make a return of process. So in order for State's Conduct to be authorized in this case, they must assist, they must conduct investigations that assist the State's Attorney in the performance of his duties. It does not do that. And because it does not do that, the traffic stops, the searches, and the arrests in these consolidated cases were made without statutory authority. And as this Court's holding in People v. Carrera makes clear, the exclusionary rule applies when an arrest is made without appropriate statutory authority. Importantly, the State does not dispute this principle, at least with respect to Issue 1. They have never argued that in the event this Court or any of the Courts below were to conclude that SAFE exceeds the scope of its authority, that the exclusionary rule should not apply. That issue has not been contested or litigated at any point. I'd like to focus the argument, my argument, addressing the State's argument that SAFE functions in an effort to assist the State's Attorney in the performance of his common law duty to investigate. That is the only duty that the State has identified as a duty that SAFE assists the State's Attorney in performing. Under the case law in Illinois on this subject, particularly the subject of the State's Attorney's duty to investigate, which as you're going to recognize, it's rather scant. I'm really just focusing on this Court's decision in Williams and the Appellate Court's decision in People v. Noren. The State's Attorney's duty to investigate the facts of an alleged criminal act that has already occurred in two limited circumstances. When local police are inadequately investigating that criminal act or when they need investigative assistance to investigate that criminal act. In other words, the Courts in the State have recognized that the State's Attorney stands ready to provide investigative assistance to the police. That is the extent of the duty to investigate that via the Appellate Court. The investigations would not include discovering the offenses? No. What about State's Attorneys convening a grand jury and investigating drug activity in their county? I believe if, just in the abstract, I would say no. If there is a specific incident of suspected drug trafficking or drug dealing, then yes. Suppose the State's Attorney gets a number of reports that there are a number of drug houses and that there's a lot of drug activity going on in their county. What do they do about that? They should turn that information over to local law enforcement. And that's local law enforcement's responsibility to investigate that. Now, if local law enforcement is doing that inadequately, they investigate it, but turn the information over to the State's Attorney and the State's Attorney views that as inadequate, or if local law enforcement requests the State's Attorney to provide assistance in their investigation, then that would be okay under the statute. But your hypothetical is far beyond what's going on here. We have a State's Attorney who's created his own police force and they're going out to discover the occurrence of crimes that have not yet occurred. That is a far cry from the police coming and saying, we need your help to do this. Does your argument then hinge on whether this Court decides that it's known offenses alone or suspected offenses, as the State would have us say? Investigations include suspected offenses in a particular area? I believe you need a specific known crime. I know that's your point. What if we disagree? Does that end the inquiry then with respect to whether this is a proper investigation? I believe even if that is not the case, the State still loses. And the reason why the State still loses is there is no evidence in this case that the police were inadequately investigating drug trafficking in LaSalle County. The State even admits that in their reply brief to the Appellate Court. And I'll read directly from that. The State says, and I quote, this is from page 8, it is not possible for this Court to determine whether this was an instance in which suspected illegal activity was not being adequately dealt with by other agencies. Frankly, this is a new argument that the State is making at the last minute because the facts are not on their side, the law is not on their side, and common sense is not on their side. Mr. Goffis, I thought your opponent mentioned that there was an agreement that the State's Attorney's Office should do this to help to assist them. The only facts and evidence that they're relying upon, and that they cite to in the brief, is the fact that a deputy from a local law enforcement agency comes along with the stop and brings a drug dog, which actually didn't happen in Mr. Saxon's case. The drug dog that did the air sniff was brought by a safe investigator, and that's clearly shown in the video. Are you saying there was no agreement between the law enforcement agency and the State's Attorney's Office to help them? The agreement is to provide assistance and support to SAFE. There is an agreement. There is a cooperative agreement, not a formal agreement, but a cooperative agreement that when a traffic stop is made, local law enforcement comes with a drug dog, which did not happen in all cases. It did not happen in Mr. Saxon's case, but it did happen in other cases. But even if you want to call it a joint investigation as the State calls it, that does not mean that SAFE is assisting the State's Attorney in the performance of his duty to investigate. Now granted, in order for the Special Investigators to have police powers that are consistent under the Appellate Prosecutors Act, they need to function in cooperation with local law enforcement, but that doesn't get them to the point where they're assisting the State's Attorney in the performance of his duty to investigate. You still have to have a situation where there is an alleged criminal act that has already occurred, and local law enforcement is either not adequately investigating that criminal act, or they need investigative assistance in their investigation of that act. Did you raise that point in your motion to suppress? We argued in the motion to suppress that the State's Attorney's Felony Enforcement Team exceeds their statutory authority. You're indicating that the function of these officers should be to assist in the investigation. The statute says conduct investigations which assist the State's Attorney in the performance of his duties. If we were to read that statute to mean performance of his duties is to prosecute crimes, whether known or unknown to him at that time, would not that reading support a finding that they could conduct those investigations? I think the issue necessarily, you necessarily need to consider what is the investigative duty of the State's Attorney, and that would answer your question. But again, the statute doesn't say to assist the State's Attorney in investigating crimes. It says in the performance of his duties. What's the broad parameter of performance of his duties other than to prosecute crimes? Under Subsection A of that statute, the duty of the State's Attorney is largely to prosecute crimes. And the only place that the State is looking to for another duty other than outside the prosecutorial context is the duty to investigate under the case law of the State. If this Court were to strictly look at Subsection A of that statute, then they certainly are not assisting the State's Attorney in the performance of the duty to prosecute because there is not a case on the State's Attorney's desk that needs to be prosecuted. They are going out to discover new cases to generate investigations on their own to generate investigations for the State's Attorney's office. I would like to make one important point, and that is that the circuit judge found in Mr. Saxon's case that SAFE does not assist other law enforcement agencies. Now, the State does not argue that this finding is against the manifest weight of the evidence. They argue instead that the judge never made this finding. Respectfully, the State is ignoring the record. The judge stated, and this is from page 7 of the report proceedings in Mr. Saxon's case, at the time he was addressing the motion to suppress, he said, quote, and he's referring to this for Bryantown, quote, he's not getting his information from some other agency or aiding some other agency, end quote. He then goes on to say, quote, this is not aiding some other investigation. So I think for record in this case it's very clear that the SAFE unit is not assisting local law enforcement in conducting investigations. And, again, the State has even conceded below that local law enforcement is not actively, or is not a case of inactively investigating. And if we think about that, that would mean that Illinois State Police, the LaSalle County Sheriff, and the police, the municipal police in LaSalle County were all failing to do their jobs. Because all of those entities are empowered by statute to be conservators of the peace with the duty to go out and seek those who are violating the statutes of this State. That's not what's going on here. Do we have to find that before that State's attorney can help or assist another law enforcement agency that that law enforcement agency has to be doing its job inadequately, or is just assistance sufficient? One or the other. Under the case law of Illinois as it stands right now, it would have to be one or the other. Assistance is okay even without doing their job inadequately? The assistance must be needed. So they do go hand in hand. If you look at the people versus Noren from the appellate court, we have a situation where someone is suspected of committing a DUI, and the police investigate that scenario. But the police do not get blood alcohol test results. That is an inadequate investigation. Therefore, the prosecutor can go out and they can get a subpoena, and they can obtain those blood alcohol test results. That's really the scenario that I'm trying to convey to this court. It's not a situation where, you know, a State's attorney is driving down the road, they see someone who's speeding, and the State's attorney goes, oh, well, there's no cops around here to see if this person's speeding. It's an inadequate investigation. I'm going to pull them over. That's not what I think the intent of legislation was. You need a situation where the local law enforcement is actually investigating an alleged criminal act, and then they turn it over to the State's attorney, and the State's attorney says, this has been done inadequately. Or alternatively, there's been an alleged criminal act, and the local law enforcement requests the assistance of the State's attorney's office for their investigation. Counsel, could you help me? When a State's attorney is using a special investigator, what statutory provision are you relying upon? Can you tell us the provision that requires this either finding of inadequacy or this implied agreement? Because what I had read said that the special refused by the State's attorney, the State's attorney must consult with the local affected police agencies. Is it more than consultation? It is. What's the statute that says that? It's part of subsection B of that statute. I'm looking at B, and I want you to tell me where it is. What you're referring to for purposes of cooperation, that is necessary for special investigators to use police powers, okay? But that doesn't, even if they're cooperating, that doesn't necessarily mean that they're assisting the State's attorney in the performance of its duties. They're separate requirements. And what the State is doing is trying to conflate those requirements so that they can just say, because they're cooperating with local law enforcement, that it meets the requirements of the statute. Where the two alternative requirements come in for purposes of local law enforcement, either investigating inadequately or needing assistance, that is not in the statute. That is what the duty to investigate for purposes of, as stated in the few court decisions that have addressed the duty to investigate, that's where that comes in. Because ultimately, the State's investigators must perform an investigation that assists the State's attorney in the performance of its duties. And the duty that we're looking at, according to the State, is the duty to investigate. I hope I've answered your question. Aren't you asking us to apply form over substance? I'm sorry, I didn't hear you. Aren't you asking us to apply form over substance? Absolutely not. I'm asking this Court to apply the law as stated in subsection B of the statute and as has been stated by the case law. That's what I'm asking this Court to do. One more point before I turn the argument over to Mr. Comey in regards to legislative intent. When these State's investigators conduct a traffic stop, not only are they the arresting party on behalf of the State, they're also the eyewitness, the primary eyewitness to a crime. And the primary eyewitness in the State's prosecution of the accused. We have, necessarily, an employer-employee scenario. And in every case that results due to State's conduct, you necessarily need a special prosecutor for that case. I do not think our legislature intended to create a scenario and envision a scenario where you have a recurring need for a special prosecutor in prosecutions. Unless this Court has any further questions for me, we would respect your time. Counsel, let me ask you this. Yes, sir. There are five stops at issue, is that right? Correct. Okay. And I know that on the one, the Attorney General made reference to the Peru police officer, Jeremiah Brown, being present. Correct. In that stop, who actually effected the process, the arrest? I believe that it was safe, but since that is Mr. Comey's case, he could probably better address that for you. Okay. Were there officers from Peru or the other city? I can't remember which one it was in LaSalle County present on any of the other four stops. I can only comment on Mr. Saxon's case. We have the video. The stop was made by Mr. Gaffer himself. Then you have two other safe investigators that come. And then at various other points in the stop, you have a man in jeans and a beige coat come. We don't know where he's from. And you have some sort of an officer in a black uniform come 30 minutes into the traffic stop. And it's very clear from the video that they're simply assisting safe. Safe is running the show. Back to your legislative intent argument, wouldn't that apply to any what you would even call proper investigatory actions by someone employed by the state's attorney's office? Any evidence gathering, taking a statement? I mean, couldn't you say the same thing, that it's not reliable as a result of that? I mean, I don't see the difference there. No, Your Honor. Certainly that argument can't be made by a defense attorney. But what I'm talking about is different from a scenario where you have an employee of the state's attorney's office simply collecting evidence. Here you have an employee of the state's attorney's office acting as the primary witness for the state. He's making the traffic stop. He's performing the search. He's seizing the narcotics. He's taking the defendant's statements. That is the primary witness. That is the state's entire case relies on an employee of the state's attorney's office. Unless there are any further questions, we would ask you to affirm the judgment of the appellate court. Thank you. Thank you, Mr. Goldfuss. Mr. Comey? May I have a moment to set up the easel, please? It's your time. I want to say the first thing I want to make sure everyone can see. You probably didn't provide anything you had in your package before you came here today. I would remind you, if you move from the microphone, we won't pick you up on record. Thank you. Good morning. It's a pleasure to be here. This is my second argument as appellee. The first one was in 1980, so this way I think will be my last as appellee during a 40-year career. So it's a pleasure to be here this morning. I'm here on behalf of Kara Ringland, who was stopped by a LaSalle County State's Attorney's Highway Patrol, something unknown at Illinois law. There are hundreds of counties in Illinois, but yet no other highway patrol is operated by the state's attorney throughout the state. And since we've been a state since 1818, I can only imagine if Mr. Lincoln had been traveling from county to county, stopped by the state's attorney who was opposing him in a criminal case with a highway patrol, we'd all know about it by the law of the state. Could you state your name for the record, please? Steven, S-T-E-P-H-E-N, middle M, last name Comey, K-L-M-I-E. So in any event, this is a first for Illinois, a state's attorney's highway patrol. It is a first that is given guns, vehicles with flashing lights, takedown systems, sirens, and the ability to sit in interstate highways when the Illinois Vehicle Code clearly gives the duty to patrol the Illinois highways to the Illinois State Police. Our Vehicle Code requires them to patrol the highways and to enforce the law on the highways of the state. In this particular case, the state's attorney, in what I would suggest to you, was a vehicle to increase the take on the forfeiture side of the business from up from 12.5 percent to 66 percent, decided to put his people in the front line so that when the forfeiture take was divvied up at the conclusion and judgment of the forfeiture case, the state's attorney's office would march away with a huge pot of gold. Is that in the record? It was in the trial court. I brought that up in front of Judge Ryan, who was the chief judge who heard the case, and one of the issues in cross-examining both Mr. Crown and also Mr. Gator was to bring to the court's attention that the parallel companion consolidated forfeiture case had a seizure of money for which the state's attorney's office would get virtually all of it with except whatever they had to dribble out to the dog handling portion of the case on the take in the case. So, yes, the answer to your question is it can be found in the cross-examination record when I asked about bias, prejudice, and motives to testify falsely in connection with the case. So going to the substance of what the issue is here, it's the Illinois exclusionary rule, which is an outgrowth of the Constitution in Section 6 of Article I, which is the primary focus of our review here. And Illinois historically goes back to 1923 as a state where the exclusionary rule was important to avoid nasty behavior on the part of the police which violated the Constitution for which nobody had any recourse. You may recall there were no civil rights recoveries in federal court back in 1923. So Illinois judicially created its own rule to enforce the old Constitution, and that was part of the subject of the conversation in the Cancan Convention in enacting the new Constitution and putting in Article VI again the prohibition against unreasonable search and seizures. Also, at the time that was all going on, everyone was aware of Hampton v. Hammerhand, and I know that all of us have been able to remember that the Chicago police, Eddie Hammerhand, his members, his special investigators, happened to run into the Black Panthers one night with a search warrant and executed everybody in the apartment. And it's in that background that you look at the statute as a limited statute which gives limited duty to state's attorneys and investigators. Are you trying to give us some legislative history as to the enactment of the statute, as to the authority of the special investigator? Yes. I'm trying to give you the idea that at the time the legislature adopted 55 ILCS 539005.B, they knew exactly about state's attorneys and investigators. What date was the statute in the form that we're talking about adopted? I believe I was correct, about 1969-70, in that area. Okay. I could be wrong, but that's what I think I saw in the bottom of the page with the annotations. But in any event, the statute is really clear. It says on its face they have the authority to appoint a special investigator to serve subpoenas, make return of process, and conduct investigations. Now, if we read Justice Scalia's book on statutory interpretation, the rule of three governs. And the rule of three is a limitation. And the limitation is that when you look at the statute, you're limited to the three objects in the statute when the three are put together and swung together like the General Assembly has here. And so it's to assist in the performance of his duties. Well, his duties are to prosecute crime pursuant to the statute. Justice Tice asked about that duty in the statute. And that duty includes a grand jury. And a grand jury can very well have a special investigator. And the grand jury can conduct investigations using a special investigator. And they're appointed all the time. And that's a regular part of the duties of the grand jury. But this statute is designed so that the special investigator can go out and subpoena witnesses, sign the back of the subpoena, and that's return of process. That's also served summonses maybe in paternity cases or some other part where the state's attorney is trying to get service on a father who hasn't paid his child support. But there is nothing in here about running a highway patrol. There is nothing in the statute about getting out on the highway and giving people ticket books. I mean, in this particular case, the state's attorney. Going back to Justice Kilbright's question, though, just on the plain reading. I'm sorry. Well, just going back to Justice Kilbright's question on the plain reading of the statute, how do we look just at the wording of the statute where it says conduct investigations and say drug trafficking investigations are not investigations? Well, first of all, I'm not, like Mr. Popeil, slicing the onion so fine that I see it that way. I see an investigation as something that you know about, that you're doing. In other words, you know in advance who the object or the target might be. You know the subject in advance. You know the location potentially where the problem is. The drug house model was brought up previously by one of the justices. There's a drug house on the corner. You conduct an investigation with a grand jury. You issue subpoenas. You get them down to the courthouse. But that doesn't make sense. You know, it's a simpler question than that. I think Justice Kilbright and now myself want to know how we get there from the plain reading of the statute. How do we get there? I think by construing the words conduct investigations to mean knowing that there's some knowledge about what's to be done. I mean, in this particular case, you have people sitting on the highway and looking for out-of-state plates. And when they find out-of-state plates, they then cook up a reason to stop the car on a pretextual basis. And I'm going to show you that right here when you take a look at these photographs. I'll pull them over here. What word would you use to describe what they did if it was not an investigation? Let's start there. This would be like the general hunt for revenue and potential crime. In other words, a general hunt. This would be like looking for a fox. You go out on the horse, you bring the hounds, and you now look for the fox, okay? This is what's going on here. What's going on here is 8 o'clock in the morning, they get in this vehicle. They go to an interstate highway. They sit in the center of the highway, and they wait for an out-of-state plate. And when they see the out-of-state plate, because they're not at least a bit concerned about enforcing any other traffic law against anyone else, no one's heard of any prosecution for anyone speeding just for that purpose. It's always to see whether or not they can cook up a case against a particular motorist or out-of-state plate. And I'm not making a pun with your fox hunt, but I don't want to beat a dead horse here. But I've been known to do it. Do we have – are you saying that the word investigation is ambiguous and we have to look for outside aids to construct what the legislature meant by saying investigations here? Is that the principle we're going to use? Since I've been around, state's attorneys' investigations have always been either through the grand jury or through cases that have always been brought to them. In other words, I have never seen, in the state context, launching an investigation without a complaint of some kind coming first, some kind of delivery to them of a particular problem in the community, some kind of notice to them. For example, I've never heard of anyone convicting a grand jury to investigate Chicago garbage collection, where everyone in town knows if you give the guy 50 bucks, your icebox is taken out of the alley. You know, in other words, nobody calls that in. There's nothing to investigate. But when, you know, somebody in the alley calls in and says, wait a minute, the sanitation department is taking money to remove iceboxes, then the state's attorney's got something to go on in that particular alley at that particular location, that particular division of sanitation. What about the fact that – I mean, it's pretty common knowledge that large amounts of drugs move on our interstate system from out of the country and either other parts of the country into large metropolitan areas like Chicago. Are they supposed to ignore that? Absolutely not. They're not to ignore. You're making an excellent point. But the war on drugs has its limitations by our constitutional safeguards. And I believe you wrote an opinion, or Justice Ginsburg wrote an opinion, that said that the most important thing about our constitutional protections are they make us the country we are. And those protections are there regardless of the fact that there might be people violating the law traveling on the interstate. Those protections are there to protect our citizens and to give our citizens rights to defend themselves against unlawful police behavior. And unlawful police behavior is stopping vehicles when they don't have authority to do so. And those constitutional protections were put there to protect our people. And if I may point to the – if I've answered your question. I want to follow up on Justice Garland's question. But the statute permits the state's attorney to have a unit to help investigate with cooperation with other law enforcement agencies. So in Justice Garland's scenario, that's what they're doing. Aren't they making stops? Not in this case because everything here was assisting the state's attorney. The state's attorney was not assisting Peru. The state's attorney was not assisting the South. The state's attorney here was running his entire own operation. And the only thing they did was supply the dog after the vehicle had been unlawfully stopped. So the unlawful stop takes place first. The detention on the highway. You can look in the record. There was absolutely no conversation about the purpose of the stop at all. None. Zero. The mudflaps on here, which have been measured, which were perfectly lawful mudflaps. They've been completely measured. I hope you get a chance in conference to look at these pictures to see that the mudflaps were completely in compliance with the law. Mr. Comey, your time has expired. You may finish up. Do you have a question? Sorry. Even if the state investigators lack the authority to arrest, is exclusion of the evidence an appropriate remedy? Is exclusion of the evidence an appropriate remedy? Absolutely. Because the Illinois exclusionary rule was designed to protect the citizens. And we're not dealing with, at this particular point, any kind of good faith. All these arguments, there's a motion before you to get rid of these arguments, which were never heard by prior courts. But the bottom line is that the exclusion of evidence argument was or was not paid by the state. There was no evidence of good faith presented in the trial court or the appellate court. None of those arguments were raised. The first time they come spinning in here is they're not even in the petition for leave to appeal. All of them come up all of a sudden in the appellant's brief and in the reply brief. These things are brand-new inventions. It's almost like Alice in Wonderland at the Tea Party. The real case occurred in the circuit court. And what happened in the circuit court was that they argued that the state's attorney was well within his authority to create this unit to go out and issue ticket books and stop people on the highway. Thank you. Thank you, Mr. Comey. Wishing all of you a very healthy New Year. Thank you. Mr. Schneider, rebuttal. You wish us a New Year? Happy New Year? Sure. Why not? I just want to even things out. As long as I'm here. Both Mr. Comey and Mr. Golphis have argued that the term investigation is limited to investigations of specific known past offenses. But since this is a question of statutory authority, it's a question of statutory construction, it makes sense to go back to the plain language of the statute. Section 3-9005B does not define the term investigation. But the dictionary does. And I don't believe the parties disagree on the dictionary definition that Defendant Saxon provides in his brief. Defines investigation as a searching inquiry for ascertaining facts. And defines to investigate as to search out and examine the particulars of in an attempt to learn the facts about something hidden, unique, or complex, especially in attempts to find a motive, cause, or culprit. And that is exactly what happened here. We know that IAV is a major drug trafficking conduit through the state. What we don't know is the specific culprits at any given time. And so that's exactly what was happening here. They were investigating the specifics of the drug traffic. The conversation, the argument here has been focused on the meaning of the word investigation. I've been concerned about the meaning of the language of the statute, the state's attorney, and the performance of his duties. And my concern is how we define the duties of the state's attorney. And that's why I asked you some questions about the statute that defines the duties in terms of appearing in court and conducting grand juries. And then you suggest that there's kind of a broader catch-all that this falls under. So is it your position that 102 different states' attorneys across the state should have, and I shouldn't say should, but have the authority to create their own units to have parallel police enforcement units alongside all of the local police departments, the sheriff departments, the state police departments, that every single one of the state's attorneys in the state can, if they wish, have their own investigative tools of these officers? Every, under the plain language of the statute, every state's attorney is authorized to appoint special investigators to assist in the performance of his duties. Our position is that those duties include providing investigative assistance. They're saying yes. Yes. Every single. Yes. Yes. And we would suggest that the case law provides plenty of illustrations of state's attorneys doing exactly that. What cases outside of the case, for example, I noticed Judge Garmon wrote back in the day when she was on the appellate court, where the issue was whether or not a special investigator could serve a subpoena in furtherance of the state's attorney's grand jury hearing in the DUI case, or whatever it was. What other cases? You're saying there are a plethora of cases? There are many cases where this has happened? There are lots of cases, yes, illustrating this sort of collaborative relationship. My personal favorite is People v. Nolan out of the 1st District, which concerned a large-scale drug investigation. I believe it was called Operation Hollywood. And it was supervised by, it was a joint investigative effort with local law enforcement and the Cook County State's Attorney. The Cook County State's Attorney Special Investigator was supervising the operation. A Cook County Special Investigator was also involved in, I believe, a surveillance team along with police personnel. A special investigator was also involved in performing undercover buys of drugs in the area, I believe backed up by a mixed team of special investigators and police. And that, of course, makes perfect sense, even more so in smaller communities where you may need an unfamiliar face to perform undercover operations. And then finally, one of the special investigators did affect an arrest in that case. This is exactly the sort of collaborative investigative effort that the legislature believed appropriate, as evidenced by their enactment of Section 3-9005B. Section 3-9005B, by reference to the State's Attorney's Appellate Prosecutors Act, I believe it's Section 7.06 of that act, says that special investigators shall be peace officers with all the powers of policemen in cities and of sheriffs, provided that they only exercise those powers after contact and in cooperation with local law enforcement. There is no reason to provide them with all the powers of the police if the General Assembly did not believe it appropriate for them to have all of the powers of the police. So just as one could say that, turning briefly back to the question of the definition of investigation, just as one could say the police are investigating the murder, one could also say the police are investigating drug trafficking along Interstate 80. Why did the Peru Police Department have a canine unit stationed by the on-ramp? Well, the police are investigating drug trafficking along Interstate 80. Also, I'll note in passing that even if the requirement were that investigations be into specific offenses that have already been committed, all of the offenses in this case were offenses that were committed. The defendants were in possession of the drugs at the time they were pulled over. They already were possessing illegal drugs. The provision of police powers under the statute also shows why the concerns about sort of the optics of the case. Well, they had a vehicle with flashing lights. They had firearms. Doesn't that feel police-y in a way that we don't think of as appropriate for states' attorneys? Well, the General Assembly has said in the statute that special investigators may carry firearms with the permission of the state's attorney, that provided that they pass a basic police training course and are acting in cooperation with local law enforcement, that they can exercise all of those powers, exactly the powers that were exercised here. I'll speak briefly on the question of whether we forfeited our doctrinal rationales for suppression being the inappropriate remedy. First, I'd suggest that whether suppression is the appropriate remedy is inextricably intertwined with any motion to suppress. Second, I would note that the nature of our – we've consistently disputed that suppression should be granted, and this Court has explained that you forfeit issues, not arguments. All the various doctrinal rationales, the nature of the suppression remedy, the de facto officer doctrine, the citizen's arrest precedent, which suggests that an invalid color of title is not a sufficient basis for suppression because, of course, a citizen affecting arrest has no claim to office at all, and yet a citizen's arrest would still result in admissible evidence. Defendant's rule would result in a situation where a citizen could affect this traffic stop and the drugs would be admissible. But a special investigator who affects the same stop in the same manner, the only difference is that his title was defective in some way, would result in the suppression of the same evidence. We would suggest that under these sorts of circumstances, suppression simply doesn't pay its way. For those reasons, we ask that the Court reverse the district and trial courts. Thank you. Thank you. Case number 119484, People v. Ringland, et al., will be taken under advisement as agenda number one. Mr. Schneider, Mr. Goldfuss, Mr. Comey, thank you for your arguments today. You are excused.